IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG O'CONNOR, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-2218 |
| | : | |
| MARY MACDOUGALL REIFF, et al. | : | |
|     Defendants. | : | |

**MEMORANDUM**

**McHUGH, J.**                                                                 **AUGUST 4, 2023**

*Pro Se* Plaintiff Craig O'Connor, a pretrial detainee awaiting trial in Bucks County,

Pennsylvania, brings this Complaint pursuant to 42 U.S.C. § 1983, based on his arrest and related

criminal charges. Mr. O'Connor seeks to proceed *in forma pauperis*. For the following reasons,

the Court will grant O'Connor leave to proceed *in forma pauperis* and dismiss his Complaint in

part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Because some of O'Connor's claims will be dismissed without prejudice, he will be granted the

option of filing an amended complaint.

**I.      FACTUAL ALLEGATIONS**

Mr. O'Connor names as Defendants three Bristol Township Police Officers involved in

his May 31, 2021 arrest: (1) Mary MacDougall Reiff; (2) Timothy MacDonald; and (3) Eugene

Zurybida. (Compl. at 2-3.)[1] O'Connor alleges that on May 31st, when returning to his Bristol

apartment he shared with his wife, he found his belongings in the hallway outside of the

apartment, presumably left there by his wife. (*Id*. at 4, 12, 13.) O'Connor alleges that his wife

has "mental health problems," which caused her to forget to leave O'Connor's medication with

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

his other belongings.  (*Id*. at 13.)  When O'Connor's wife allegedly did not answer the door,

O'Connor broke an apartment window to secure his medication from the dining room table.  (*Id*.)

According to O'Connor, nobody was in the apartment at the time, including his wife.  (*Id*. at 12,

13.)  O'Connor states that "there was a PFA that was never served [on him]" and that he was

living at the apartment at the time.[2]  (Compl. at 12.)

　　　　Although it is not entirely clear, at some point Defendants arrived at the apartment to

arrest O'Connor.  (*Id*. at 12-13.)  When they arrived, at least one officer was wearing a body

camera.  (*Id*. at 12.)  O'Connor's wife allegedly gave a statement to Officer Reiff, stating that she

did not know who broke the window and was not sure whether O'Connor ever entered the

apartment.[3]  (*Id*.)  Despite his wife's statement, O'Connor was charged with "burglary with a

person present" and stalking.  (*Id*.)  O'Connor states that Defendants "fabricated the police

report" and that Officer Reiff "lied" about the statement O'Connor's wife made to the police

officers.  (*Id*.)  O'Connor does not allege how Defendants fabricated or lied with respect to the

police report.  O'Connor further alleges that he asked to "have rights read to [him]" but was told

by Officer MacDonald that a reading of rights was not required because the officers were not

going to ask O'Connor any questions.[4]  (Compl. at 12.)  O'Connor states that MacDonald "cut

out" their discussion about the *Miranda* warnings from the body cam video produced in

---

　　　　[2] The Court understands O'Connor to be referring to a protection from abuse order.

　　　　[3] It is not clear to the Court when and how O'Connor's wife arrived at the scene.
O'Connor alleges that she was not present when he broke the window to retrieve his medication.
He also alleges that she gave a statement to the police at the time of his arrest.

　　　　[4] The Court understands Mr. O'Connor to be referring to warnings required by *Miranda
v. Arizona*, 384 U.S. 436 (1966).  In *Miranda*, the Supreme Court held that when engaging in a
custodial interrogation, police officers must inform a suspect that "he has the right to remain
silent, that anything he says can be used against him in a court of law, that he has the right to the
presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him
prior to any questioning, if he so desires."  *Id*. at 479.

discovery.  (*Id*. at 14.)  A review of the public record reveals that O'Connor was charged with

(1) "Burglary – Overnight Accommodations; Person Present; Bodily Injury Crime"; (2) criminal

trespass; (3) stalking; and (4) criminal mischief.  *Commonwealth v. O'Connor*, CP-09-CR-

0005057-2021 (C.P. Bucks).  Trial is scheduled for August 21, 2023.  *Id*.

Mr. O'Connor also complains generally about aspects of his criminal case.  For example,

he states that two defense attorneys were "fired for misconduct and civil rights abuses," that

evidence was suppressed, that he was unable to obtain the police video of his wife's statement to

Officer Reiff, and that he was "refused several witnesses."[5]  (Compl. at 13-14.)

Based on these allegations, O'Connor asserts § 1983 claims.  (*Id*. at 3.)  Although

O'Connor does not cite to any specific Constitutional provision, the Court understands O'Connor

to raise Fourth Amendment and Fifth Amendment claims.  Because O'Connor does not identify

any form of relief, it is not clear to the Court what remedy he seeks, if any.  (*Id*. at 3 (leaving

blank the question about relief requested); *see also* Fed. R. Civ. P. 8(a)(3) (stating that "[a]

pleading that states a claim for relief must contain . . . a demand for relief sought").

## II.      STANDARD OF REVIEW

The Court grants O'Connor leave to proceed *in forma pauperis* because it appears that

he does not have the ability to pre-pay the fees to commence this case.[6]  Accordingly, 28 U.S.C.

§ 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.

---

[5] To the extent Mr. O'Connor seeks to bring § 1983 claims based on events surrounding his criminal trial, such claims fail because he has not alleged how any of the named Defendants were involved in the alleged wrongs involving his attorneys, the suppression of evidence, and the unavailability of witnesses.

[6] However, as O'Connor is currently incarcerated, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  "At this early stage of the litigation,' '[the Court will] accept the facts

alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to

state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not

suffice.  *Iqbal*, 556 U.S. at 678.  As O'Connor is proceeding *pro se*, the Court construes his

allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42

U.S.C.  § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988).  For the following reasons, the Court will dismiss O'Connor's Complaint.[7]

---

[7] In drafting his Complaint, Mr. O'Connor checked the boxes on the form he used
indicating that he seeks to name the Defendants in their official capacities.  (Compl. at 2-3.)
O'Connor appears not to have understood the implication of checking the official capacity box.
Claims against government employees named in their official capacity are indistinguishable from
claims against the governmental entity that employs the Defendants.  *See Kentucky v. Graham*,
473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way
of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v.*

### A.      Fourth Amendment Claims

Liberally construing his Complaint, the Court understands O'Connor to be raising Fourth

Amendment claims for false arrest, false imprisonment, and malicious prosecution, arising out of

his arrest and prosecution for burglary with a person present, stalking, and other crimes.  To state

a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff

must allege facts establishing that he was arrested without probable cause.  *See Orsatti v. N.J.*

*State Police*, 71 F.3d 480, 482 (3d Cir. 1995).[8]  "[P]robable cause to arrest exists when the facts

and circumstances within the arresting officer's knowledge are sufficient in themselves to

warrant a reasonable person to believe that an offense has been or is being committed by the

person to be arrested."  *Id.* at 483.  "False arrest and false imprisonment claims will 'necessarily

fail if probable cause existed for any one of the crimes charged against the arrestee.'"  *Harvard*

*v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457,

477 (3d Cir. 2016)).

---

*N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  "[A]n official-capacity suit is, in
all respects other than name, to be treated as a suit against the entity."  *Id.*  Because O'Connor
does not attempt to allege an official capacity claim, *see Monell v. Dep't of Soc. Servs. of N.Y.*,
436 U.S. 658, 694 (1978) (holding that, to state a claim for municipal liability, a plaintiff must
allege that the defendant's policies or customs caused the alleged constitutional violation), the
Court will liberally construe the Complaint to assert a claim against the Defendants in their
individual capacity.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To
determine whether a plaintiff sued state officials in their official capacity, we first look to the
complaints and the course of proceedings." (quotations omitted)); *Coward v. City of
Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim
against defendant in his individual capacity to proceed event though "[plaintiff] did not check the
box indicating a desire to sue [that defendant] in his individual capacity" where the allegations
clearly sought relief based on the defendant's conduct).

[8] "False arrest and false imprisonment are 'nearly identical claims' that are 'generally
analyzed together.'"  *Karkut v. Target Corp.,* 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting
*Brockington v. Phila.,* 354 F. Supp. 2d 563, 570 n. 8 (E.D. Pa. 2005) (citation omitted)).

While O'Connor attempts to present claims based on alleged violations of his Fourth

Amendment rights in connection with his arrest, he merely alleges that Defendants "fabricated"

the police report without identifying specifically how they fabricated it, and whether this alleged

fabrication amounted to a lack of probable cause for his arrest.  *See, e.g., Godfrey v.*

*Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent

plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to

facts suggesting that Defendant Thompson lacked probable cause to believe he had committed

the offense for which he was arrested").  To the extent that O'Connor bases his claim on the fact

that he was charged with burglary with a person present when, as he alleges, nobody was

actually present at the apartment when he entered, such a claim necessarily fails.  Even assuming

the facts negate probable cause as to the burglary enhancement, O'Connor has not alleged any

facts to support an inference that Defendants lacked probable cause to believe he committed the

other crimes for which he was charged.  *See Harvard*, 973 F.3d at 199; *Barna v. City of Perth*

*Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that

could be charged under the circumstances.").  Without additional details concerning the police

officers' lack of probable cause, O'Connor's Fourth Amendment claims for false arrest and false

imprisonment are undeveloped and will be dismissed without prejudice.[9]

For similar reasons, O'Connor's malicious prosecution claim must also be dismissed.  A

plaintiff asserting a constitutional malicious prosecution claim must establish that "(1) the

---

[9] To the extent O'Connor attempts to raise an independent claim based on the
Defendants' alleged "fabrication" of the police report, such a claim fails.  "[T]he mere existence
of an allegedly incorrect police report fails to implicate constitutional rights." *Jarrett v.
Township of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009).  A claim will lie only when the
false report causes a constitutional harm.  *Id.*  The constitutional harm O'Connor alleges – his
arrest and prosecution for burglary and stalking – are covered by his Fourth Amendment claims.

defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's

favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted

maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). "Probable

cause exists if there is a fair probability that the person committed the crime at issue." *Harvard*,

973 F.3d at 199 (internal quotations omitted). "To demonstrate a favorable termination of a

criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious

prosecution, a plaintiff need only show that his prosecution ended without a conviction."

*Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Mr. O'Connor has again not alleged facts to

support an inference that Defendants lacked probable cause to initiate the charges against him.

In addition, O'Connor has not alleged whether those charges terminated in his favor. Indeed, the

public record shows that his trial has not yet occurred. Accordingly, O'Connor's malicious

prosecution claim will also be dismissed without prejudice.[10]

B.      **Fifth Amendment Claims**

O'Connor appears to assert a § 1983 claims based on Officer MacDonald's refusal to

provide *Miranda* warnings during the arrest. This claims must be dismissed with prejudice

---

[10] Under the doctrine of abstention developed in *Younger v. Harris*, 401 U.S. 37 (1971), there is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The specific elements of *Younger* abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). Because O'Connor's Fourth Amendment claims are undeveloped, the Court will not address whether *Younger* abstention necessitates that such claims be stayed pending resolution of the state judicial proceedings. However, if O'Connor files an amended complaint stating viable Fourth Amendment claims, the Court will consider the doctrine at that time, if applicable.

because the United States Supreme Court recently held that *Miranda* violations do not "provide[]

a basis for a claim under § 1983." *Vega v. Tekoh*, 142 S. Ct. 2095, 2101 (2022); *see also id.* at

2108 (reasoning that "a violation of *Miranda* is not itself a violation of the Fifth Amendment"

and finding "no justification for expanding *Miranda* to confer a right to sue under § 1983").

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant O'Connor leave to proceed *in forma*

*pauperis* and dismiss his Complaint in part with prejudice and in part without prejudice pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  O'Connor's Fifth Amendment

claims will be dismissed with prejudice and his Fourth Amendment claims will be dismissed

without prejudice.  The Court will grant Mr. O'Connor leave to file an amended complaint in the

event he can address the defects the Court has noted as to his Fourth Amendment claims.  An

appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

**/s/ Gerald Austin McHugh**

**GERALD A. McHUGH, J.**